ELECTRONICALLY FILED
Jefferson County Circuit Court
Barbara A. Collins, Circuit Clerk
2021-Nov-12 12:55:00
35CV-21-776
C11WD05 : 22 Pages

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ARKANSAS
### _____DIVISION

PHYLLIS LONG, as **SPECIAL ADMINISTRATRIX**
of the **ESTATE OF MARGAREE PARKER**,
**DECEASED**, and on behalf of the
**WRONGFUL DEATH BENEFICIARIES** of
**MARGAREE PARKER**                                                    **PLAINTIFF**


**vs.**                                    CASE NO. _____


**THE WATERS OF WHITE HALL, LLC;**
**GUBIN ENTERPRISES LIMITED PARTNERSHIP;**
**THE WATERS OF ARKANSAS MASTER TENANT, LLC;**
and **MICHAEL BLISKO**                                          **DEFENDANTS**

---

## WRONGFUL DEATH COMPLAINT

---

Plaintiff, Phyllis Long, by her attorneys, The Law Offices of Darren O'Quinn PLLC, for her Complaint, states:


### Preliminary Statement

1.      This is an action to recover monetary damages for serious injuries and death suffered by Margaree Parker due to the actions and inactions of defendants while she was a nursing home resident at The Waters of White Hall, LLC. During that time, Margaree Parker was allowed to develop and suffer from foul-smelling, pus-infiltrated bedsores contaminated with fecal matter, dehydration, and urinary tract infections that eventually killed her by

causing blood poisoning, in addition to extreme pain, emotional distress, and other harms and losses.

2.      This action arises under the common law of the state of Arkansas, the Arkansas Medical Negligence Act *(Ark. Code Ann. §16-114-201 et seq.)*, the Arkansas Protection of Long Term Care Facility Residents Act *(Ark. Code Ann. §20-10-1201 et seq.)*, the Arkansas Omnibus Long Term Care Reform Act *(Ark. Code Ann. §20-10-1001 et seq.)*, the Arkansas Staffing Requirements for Nursing Facilities Act *(Ark. Code Ann. §20-10-1401 et seq.)*, the Arkansas Deceptive Trade Practices Act *(Ark. Code Ann. §§ 4-88-107* and *4-88-204 et seq.)*, the Arkansas Survival of Actions Act *(Ark. Code Ann. § 16-62-101)*, the Arkansas Wrongful Death Act *(Ark. Code Ann. § 16-62-102)*, and other applicable laws for medical negligence, ordinary negligence, violation of nursing home resident rights, deceptive trade practices, and breach of fiduciary duty by defendants.

3.      The amount in controversy exceeds, exclusive of interest and costs, the sum required for federal court jurisdiction in diversity of citizenship cases. Jurisdiction of this Court is invoked pursuant to *Ark. Cont. Amendment 80 §6* and *Ark. Code Ann. §16-13-201 (Repl. 1999)*. Venue is proper pursuant to *Ark. Code Ann. §16-60-105*.

### Parties

4.      Plaintiff, Phyllis Long, is the Special Administratrix of the Estate of Margaree Parker, Deceased, as appointed by the Circuit Court of Saline

2

County, Arkansas, Case No. 63PR-21-561 and brings this action on behalf of the Estate of Margaree Parker, Deceased and the wrongful death beneficiaries of Margaree Parker.

5.      Margaree Parker was a nursing home resident of The Waters of White Hall, LLC in Jefferson County, Arkansas at the time of the events set forth in this Complaint.

6.      Defendant The Waters of White Hall, LLC (also referred to herein as "The Waters" or defendants unless otherwise specifically identified) is a for-profit limited liability company and nursing home organized and licensed in the state of Arkansas with its principal place of business in Jefferson County, Arkansas that engages in the for-profit custodial care of elderly, helpless individuals who are chronically infirm, mentally and physically impaired, and in need of nursing home care and treatment in Jefferson County, Arkansas. At all times material to this action, The Waters was the licensee of the nursing home facility of which Margaree Parker was a resident and owned, operated, and controlled it. This control included, but was not limited to, control of marketing, human resources, training, staffing, creation and implementation of all policy and procedures, federal and state Medicare and Medicaid reimbursement, quality of care assessment and compliance, licensure and certification, legal services, and financial, tax, and accounting control through fiscal policies established by The Waters and its directors, officers, members, agents, and high managerial personnel.

3

7.     Defendant Gubin Enterprises Limited Partnership (also referred to herein as "Gubin" or defendants unless otherwise specifically identified) is a for-profit limited partnership and nursing home owner and management company organized and existing in the state of Indiana with its principal place of business in Jefferson County, Arkansas that engages in the for-profit custodial care of elderly, helpless individuals who are chronically infirm, mentally and physically impaired, and in need of nursing home care and treatment in Jefferson County, Arkansas. At all times material to this action, Gubin was a 50% owner and the management company of The Waters and controlled its operation, planning, management, services, and quality control while Margaree Parker was a resident there. The authority exercised by Gubin over the nursing home facility included, but was not limited to, control of marketing, human resources management, training, staffing, services, creation and implementation of all policy and procedures used by the nursing home facility, federal and state Medicare and Medicaid reimbursement, quality care assessment and compliance, licensure and certification, legal services, and financial, tax, and accounting control through fiscal policies established by these defendants. Moreover, Gubin had intertwining directors, officers, members, agents, and high managerial personnel with The Waters and the other defendants herein, as well as members of the governing body of The Waters that were legally responsible for establishing and implementing policies regarding the management and operation of the nursing home facility,

and as such was responsible for the supervision of all aspects of the care of residents, finances to provide staff, supplies, and equipment for the care and well-being of the residents of The Waters and the policies and procedures developed to govern the care of the residents there making Gubin responsible for the liability described in this Complaint. The training, expertise, sophistication, and experience of Gubin allowed it to be able to anticipate and know that the lack of proper financial resources for the sufficient supervision, staffing, and supplying of The Waters could result in injuries to Margaree Parker and other residents of The Waters.

8.      Defendant The Waters of Arkansas Master Tenant, LLC (also referred to herein as "Master Tenant" or defendants unless otherwise specifically identified) is a for-profit limited liability company and real estate and management company organized and existing in the state of Arkansas with its principal place of business in Jefferson County, Arkansas that engages in the for-profit custodial care of elderly, helpless individuals who are chronically infirm, mentally and physically impaired, and in need of nursing home care and treatment in Jefferson County, Arkansas. At all times material to this action, Master Tenant was an entity used to divert monies and assets away from The Waters and assisted in its operation, planning, management, services, and quality control while Margaree Parker was a resident there. Moreover, Master Tenant had intertwining directors, officers, members, agents, and high managerial personnel with The Waters and the other

5

defendants herein, as well as members of the governing body of The Waters that were legally responsible for establishing and implementing policies regarding the management and operation of the nursing home facility, and as such was responsible for the supervision of all aspects of the care of residents, finances to provide staff, supplies, and equipment for the care and well-being of the residents of The Waters and the policies and procedures developed to govern the care of the residents there making Master Tenant responsible for the liability described in this Complaint. The training, expertise, sophistication, and experience of Master Tenant allowed it to be able to anticipate and know that the lack of proper financial resources for the sufficient supervision, staffing, and supplying of The Waters could result in injuries to Margaree Parker and other residents of The Waters.

      9.     Defendant Michael Blisko (also referred to herein as "Blisko" or defendants unless otherwise specifically identified) is an individual and 50% owner and manager who engages in the for-profit custodial care of elderly, helpless individuals who are chronically infirm, mentally and physically impaired, and in need of nursing home care and treatment in Jefferson County, Arkansas. At all times material to this action, Blisko was a director, officer, member, agent, governing body member, and high managerial personnel of the other defendants and controlled The Waters operation, planning, management, services, and quality control while Margaree Parker was a resident there. The authority exercised by Blisko over the nursing home facility

included, but was not limited to, control of marketing, human resources management, training, staffing, services, creation and implementation of all policy and procedures used by the nursing home facility, federal and state Medicare and Medicaid reimbursement, quality care assessment and compliance, licensure and certification, legal services, and financial, tax, and accounting control through fiscal policies established by these defendants. Moreover, Blisko was legally responsible for establishing and implementing policies regarding the management and operation of the nursing home facility, and as such was responsible for the supervision of all aspects of the care of residents, finances to provide staff, supplies, and equipment for the care and well-being of the residents of The Waters and the policies and procedures developed to govern the care of the residents there making Blisko responsible for the liability described in this Complaint. The training, expertise, sophistication, and experience of Blisko allowed him to be able to anticipate and know that the lack of proper financial resources for the sufficient supervision, staffing, and supplying of The Waters could result in injuries to Margaree Parker and other residents of The Waters.

10.    At all relevant times mentioned herein, defendants were subalterns, agents, and subsidiaries/affiliates of each other and owned, operated, and controlled the nursing home facility of which Margaree Parker was a resident directly, indirectly, or through the agency of each other and other diverse subalterns, agents, subsidiaries, contractors, and employees. The

actions of these defendants and each of their subalterns, agents, subsidiaries, contractors, and employees whose acts or omissions injured Margaree Parker are imputed to each defendant, jointly and severely, as each defendant's acts and omissions worked together with the acts and omissions of the other defendants as a proximate cause of the damages and injuries suffered by Margaree Parker.

11.     Furthermore, the training, expertise, and experience of the defendants allowed them to be able to anticipate and know that the lack of proper financial resources for the sufficient supervision, staffing, and supplying of the nursing home facility would likely result in injuries to Margaree Parker.

12.     Moreover, defendants have vicarious liability for the acts and omissions of all persons or entities under defendants' control either directly or indirectly whose acts or omissions injured Margaree Parker including their employees, agents, consultants, medical directors, and independent contractors, whether in-house or outside entities, individuals, agencies, or pools causing or contributing to the injuries of Margaree Parker.

13.     Finally, at all relevant times these defendants had among them (1) an agreement, express or implied; (2) for the common purpose of operating The Waters; (3) with a community of pecuniary interest in that purpose; and (4) with an equal right to a voice in the direction and control of the operation of The Waters thereby imputing the conduct of each defendant to the other,

jointly and severally, under doctrine of joint enterprise as defined by *AMI 712* and other applicable laws.

## Facts

14.    Margaree Parker was admitted to The Waters on January 18, 2020, after her family could no longer care for her.

15.    Defendants actively sought residents with similar medical and nursing needs as Margaree Parker's in order to fill their empty beds and increase their rate of occupancy and overall revenue. In fact, Margaree Parker was the kind of resident whose care, paid for by the government, defendants actively sought to fill their empty beds and to increase their rate of occupancy. Defendants were aware of Margaree Parker's medical conditions and the care and treatment that she required when they represented they could adequately care for her. Notwithstanding this knowledge, defendants failed to provide for Margaree Parker's needs and failed to provide sufficient staff, services, and supplies to meet her needs.

16.    In an effort to assure that Margaree Parker and other residents whose care was funded by the government were placed at The Waters, defendants held themselves out to the Arkansas Department of Human Services and to the public at large as being:

a)    Skilled in the performance of medical, nursing, rehabilitative, and other services;

b)    Properly staffed, supervised, supplied, and equipped to meet the total needs of their residents;

c)    Able to specifically meet the total medical, nursing, rehabilitative, and other needs of their residents; and

d)    Licensed by the state of Arkansas and complying on a continual basis with all rules, regulations, and standards established for their facility.

17.    In reality, however, defendants knew that The Waters below average on health inspections, staffing, and quality of resident care.

18.    Defendants failed to discharge their responsibilities to Margaree Parker with a reckless disregard and conscious indifference for her rights and safety causing her to suffer the injuries set forth herein. The severity of the recurrent negligence inflicted on Margaree Parker by defendants accelerated the deterioration of her health and physical condition beyond that caused by the normal aging process or any underlying medical conditions and resulted in physical and emotional trauma including, without limitation, the following:

a)    Bedsores that were open and infected to the bone with fecal matter;

b)    Foul-smelling, pus-infiltrated urinary tract infections;

c)    Blood poisoning (septic shock);

d)    Dehydration;

e)    Severe acute kidney injury and failure;

f)    The need for an amputation due to a necrotic and dead left foot;

g)   Other physical and emotional maladies and indignities, harms, and losses as set forth herein and in the medical records and the discovery developed in this case; and

h)   Death.

19.   On all occasions complained of herein, Margaree Parker was under the care, supervision, and treatment of the agents and employees of the defendants and the injuries complained of herein were directly and proximately caused by the acts and omissions of the defendants.

## Causes of Action

## Medical Negligence

20.   Plaintiff incorporates by reference herein and re-alleges all of the above allegations.

21.   Defendants deviated from the acceptable standard of medical and nursing care and did not apply the skill and learning the law required in the following respects:

a)   Failure to provide the necessary care and services to prevent bedsores and their progression once they occurred;

b)   Failure to provide the necessary care and services to prevent urinary tract infections and their progression once they occurred;

c)   Failure to provide the necessary care and services to maintain proper and timely personal hygiene and sanitary care;

11

d)     Failure to provide the necessary care and services to prevent septic shock (blood poisoning);

e)     Failure to provide the necessary care and services to provide adequate fluid maintenance and prevent dehydration;

f)     Failure to provide the necessary care and services to prevent severe acute kidney injury and failure;

g)     Failure to provide the necessary care, services, sufficient staff, and supplies to meet the total needs of Margaree Parker on a 24-hour, 7-day a week basis and attain or maintain her highest practicable physical, mental, and psychosocial well-being as determined by timely assessments and an individual plan of care;

h)     Failure to provide timely and appropriate monitoring, assessments, supervision, and assistance to prevent the injuries set forth herein;

i)     Failure to monitor Margaree Parker adequately and appropriately and recognize significant changes in her condition and properly and timely notify and consult with her physician and family regarding those changes;

j)     Failure to protect and promote Margaree Parker's right to a safe, clean, sanitary, and comfortable environment, to be free from abuse and neglect, and to a dignified existence;

k)     Failure to adequately assess, evaluate, and supervise the staff to ensure that Margaree Parker received appropriate care in accordance with professional standards of quality, facility policy and procedure, and the laws, regulations, and rules applicable to the facility;

l)     Failure to provide, implement, and assure and adequate, comprehensive, and accurate care plan based on the needs and functional capacity of Margaree Parker that met her physical, mental, and psychosocial needs as identified in a comprehensive

assessment with revisions and modifications, as her needs changed;

m)     Failure to provide care and treatment for Margaree Parker in accordance with her care plan and physician's orders;

n)     Failure to maintain clinical records on Margaree Parker in accordance with accepted professional standards that are complete, accurate, timely, and organized;

o)     Failure to take reasonable steps to prevent, eliminate, and correct problems in Margaree Parker's care;

p)     Failure of the governing body of the facility to discharge their legal and lawful obligations by assuring that professional standards of quality, facility policy and procedure, and the laws, regulations, and rules applicable to the facility were consistently complied with on an on-going basis, that they remained up-to-date and modified as problems arose, and that appropriate corrective measures were implemented to correct problems concerning inadequate care;

q)     Failure to use the degree of skill and care required of a nursing home when faced with the conditions of Margaree Parker; and

r)     Other failures as set forth in the deposition testimony and discovery in this action.

22.     A reasonably prudent nursing home operating under the same or similar conditions, as well as one following the standards of care as set forth in the Arkansas Medical Negligence Act and *AMI 1501* and *1504*, would have provided the care listed above and would have foreseen that the failure to provide this care would result in devastating injuries to Margaree Parker.

13

Each of the foregoing acts of negligence on the part of defendants was a proximate cause of Margaree Parker's injuries that were foreseeable to them.

## Ordinary Negligence

23.    Plaintiff incorporates by reference herein and re-alleges all of the above allegations.

24.    Defendants owed a non-delegable duty to Margaree Parker and residents like her to hire, train, and supervise employees so that such employees deliver care and services in a safe and beneficial manner in order to assist them in attaining and maintaining their highest practicable level of physical, mental, and psychosocial well-being. Moreover, many of the acts and omissions set forth herein involve basic custodial, rather than professional, care issues such as:

a)    Turning and repositioning to relieve pressure;

b)    Wearing proper infection control equipment;

c)    Providing timely and appropriate incontinent care and hygiene;

d)    Monitoring urine for signs of infection;

e)    Providing drinking water;

f)    Noticing significant changes in condition;

g)    Supervising and monitoring staff;

h)    Staffing with sufficient numbers;

i)      Calling the doctor and family with updates;

j)      Requiring that policies and procedures be followed; and

k)      Other care related to the simple activities of daily living.

25.    Defendants were under a duty to exercise reasonable care and to render care and services as a reasonably prudent and similarly situated nursing home would render, but defendants breached their duty of care to Margaree Parker by failing to meet and abide by the standards set forth herein and this failure amounts to ordinary negligence.

26.    A reasonably prudent nursing home operating under the same or similar conditions, as well as one following the standards of care, would have provided the care listed above and would have foreseen that the failure to provide this care would result in devastating injuries to Margaree Parker. Each of the foregoing acts of negligence on the part of defendants was a proximate cause of Margaree Parker's injuries that were foreseeable to the defendants.

### Nursing Home Resident Rights Violations Against Separate Defendant The Waters

27.    Plaintiff incorporates by reference herein and re-alleges all of the above allegations.

28.    As the licensee the  nursing home facility, The Waters had a statutorily mandated, non-delegable responsibility to provide Margaree

Parker with her nursing home resident rights as set forth in *Ark. Code Ann. §*
*20-10-1201, et seq.* and other applicable laws and regulations.

29.    Notwithstanding the responsibilities of The Waters to provide
Margaree Parker with these mandated nursing home resident's rights, she was
deprived of such rights by the following failures:

a)    Failure to provide adequate and appropriate healthcare,
protective, and support services;

b)    Failure to provide adequate and appropriate therapeutic
and rehabilitative services;

c)    Failure to provide adequate and appropriate supervision
and protection;

d)    Failure to develop, implement, and update an adequate
and appropriate resident care plan to meet the needs of Margaree
Parker;

e)    Failure to maintain accurate medical and clinical records
that contain sufficient information to justify the diagnosis and
treatment and to accurately document the results, including, at a
minimum, documented evidence of assessments and the needs of
the resident, an establishment of appropriate plans of care and
treatment, and the care and services provided;

f)    Failure to appropriately monitor Margaree Parker and
recognize significant signs and symptoms of change in her health
condition;

g)    Failure to properly supervise staff;

h)    Failure to properly train staff;

16

i)      Failure to provide sufficient staff and supplies to meet the needs of Margaree Parker;

j)      Failure to treat Margaree Parker courteously, fairly and with the fullest measure of dignity; and

k)      Otherwise violating Margaree Parker's resident rights as set forth herein.

30.     Pursuant to *Ark. Code Ann. § 20-10-1209(a)(4)*, The Water's failure to do that which a reasonably careful nursing home would do under circumstances similar to those shown by the evidence in this case, which caused the serious injuries to Margaree Parker as described herein, entitles her to recover actual damages in an amount exceeding that required for federal court jurisdiction in diversity of citizenship cases and, further, punitive damages for the willful, wanton, gross, flagrant, and reckless conduct that was conducted with a conscious indifference to the rights of Margaree Parker as provided by *Ark. Code Ann. § 20-10-1209(c)*.

## Deceptive Trade Practices and Illegal Actions Against an Elderly and Disabled Person

31.     Plaintiff incorporates by reference herein and re-alleges all of the above allegations.

32.     Defendants' conduct in this case constitutes deceptive and unconscionable trade practices and is unlawful and prohibited pursuant to *Ark. Code Ann. § 4-88-107*. This conduct includes:

a)   Knowingly making a false representation as to the characteristics, standard, or quality of goods or services;

b)   Knowingly taking advantage of a consumer who is reasonably unable to protect his or her interest because of a physical infirmity or a similar factor;

c)   Engaging in unconscionable, false, or deceptive practices in business, commerce, or trade;

d)   Concealing, suppressing, or omitting material facts with the intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of goods or services; and

e)   Making other false representations as set forth herein.

33.   Defendants' conduct in this case as set forth herein also constitutes an illegal action against an elderly and disabled person in that such conduct was in disregard of the rights of Margaree Parker in that defendants:

a)   Knew their conduct was directed to an elderly and disabled person;

b)   Knew Margaree Parker was more vulnerable because of age, poor health, infirmity, impaired understanding, restricted mobility, or disability;

c)   Disregarded the standards, laws, and regulations set forth herein including, without limitation, *42 CFR §483 (https://www.ecfr.gov/current/title-42/chapter-IV/subchapter-G/part-483?toc=1*); *Arkansas Department of Human Service, Office of Long Term Care, Rules and Regulation for Nursing Homes (https://humanservices.arkansas.gov/wp-content/uploads/nfregs.pdf*); *Ark. Code Ann. §20-10-1201 et seq.; Ark. Code Ann. §20-10-1001 et seq.;* and *Ark. Code Ann. §20-10-1401 et seq.*

34.    Margaree Parker suffered substantial physical, emotional, and economic damages and mental anguish resulting from the defendants' conduct, all constituting a violation and cause of action *Ark. Code Ann. § 4-88-204.*

### Breach of Fiduciary Duty

35.    Plaintiff incorporates by reference herein and re-alleges all of the above allegations.

36.    At the time of the occurrences set forth herein, defendants were the caregivers, or owned, operated, managed, or controlled the caregivers of Margaree Parker.

37.    At the time of her admission into The Waters, Margaree Parker was elderly, frail, enfeebled, and incapacitated to the extent that she qualified for and needed to be placed in a nursing home for assistance with her health care needs, activities of daily living, and safety. Defendants were aware of this fact and her overall health condition at the time of her admission and agreed, for compensation, to provide for her care, needs, and safety.

38.    By accepting Margaree Parker into their custody and care, for compensation, defendants created a special relationship with Margaree Parker and became fiduciaries with respect to her. As a consequence, defendants owed Margaree Parker the highest degree of honesty, loyalty, good faith, fair dealing, and care, and to provide for her care and safety as her condition

reasonably required, and to subvert their own interests in providing for these needs.

39.    Defendants breached their fiduciary duty to Margaree Parker by their acts and omissions as set forth herein and, as a direct and proximate result, Margaree Parker suffered the atrocities, egregious injuries, and damages as set forth herein.

## Wrongful Death

40.    Plaintiff incorporates by reference herein and re-alleges all of the above allegations.

41.    As a direct and proximate result of the previously alleged conduct, all of which was grossly negligent, willful and wanton, outrageous, reckless, malicious, and/or intentional, defendants caused the death of Margaree Parker.

42.    Margaree Parker suffered serious injuries, loss of life, and death all of which caused her family to suffer more than normal grief upon losing their loved one.

## Damages

43.    As a proximate result of the above conduct plaintiff is entitled to damages for extreme pain and suffering, mental anguish, severe emotional distress and trauma, disability, disfigurement, degradation and deconditioning, loss of enjoyment of life, loss of quality of life and personal dignity, humiliation, fright, grief, loss of life, medical, funeral, and related

expenses and costs, and death along with other injuries, damages, harms, and losses as described herein and in the discovery taken in this matter, in an amount exceeding the minimum amount required for federal court jurisdiction in diversity of citizenship cases. Moreover, because defendants' conduct was repeated, not a mistake, and they were on notice of the matters set forth in this Complaint, and they knew or should have known in light of the surrounding circumstances, that their conduct would naturally and probably result in injury, yet they still failed to discharge their responsibilities to Margaree Parker and continued their conduct in reckless disregard and with a conscious indifference for her rights and safety causing her to suffer the injuries set forth herein, defendants are liable for punitive damages in an amount exceeding the minimum amount required for federal court jurisdiction in diversity of citizenship cases and sufficient to punish and deter them and others from similar conduct.

### Request For Jury Trial

44.     Plaintiff demands a trial by jury.

### Prayer For Relief

THEREFORE, plaintiff respectfully requests the following relief:

(A)     A joint and several judgment against defendants for all general and special compensatory damages caused by their conduct in an amount exceeding the minimum amount required for federal court jurisdiction in diversity of citizenship cases;

(B)    The cost of litigating this case as allowed by *Ark. R. Civ. P. 54* and other applicable laws;

(C)    Attorney fees pursuant to *Ark. Code Ann. §§ 4-88-113 (f)* and *4-88-201* and other applicable laws including, *inter alia,* those cited herein;

(D)    A joint and several judgment against defendants for punitive damages in an amount necessary and sufficient to punish and deter them and others from similar conduct in an amount exceeding the minimum amount required for federal court jurisdiction in diversity of citizenship cases;

(E)    A trial by jury; and

(F)    All other relief to which plaintiff is entitled or that the Court deems just and proper.

**Dated: November 12, 2021.**


Respectfully submitted,


M. Darren O'Quinn, AR Bar No. 87-125
LAW OFFICES OF DARREN O'QUINN PLLC
Suri Professional Building
36 Rahling Circle, Suite 4
Little Rock, AR 72223
(501) 817-3124 telephone
(501) 817-3128 facsimile
Darren@DarrenOQuinn.com email


**Attorneys for Plaintiff**

22